UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

JAMES W. LAYNE, IV,

    Plaintiff,

  v.

DAVID THOUROUGHMAN, *et al.*,[1]

    Defendants.

Case No. 1:23-cv-702

JUDGE DOUGLAS R. COLE
Magistrate Judge Litkovitz

## OPINION AND ORDER

Pro se Plaintiff James W. Layne, IV, was indicted in the Scioto County Court of Common Pleas for sexual battery. (Compl., Doc. 1, #4). After that case was dismissed without prejudice, (*id.*), Layne brought this case. He alleges that Defendants Scioto County Sheriff David Thoroughman, Captain Ron Davis, Detective Sergeant Jodi Conkle, Scioto County Prosecutor Shane Tieman, Assistant Scioto County Prosecutor Scott Evans, Matthew Loesch,[2] the Scioto County Sheriff's Office,

---

[1] In the Complaint, Layne alternately spells Defendant David Thoroughman's name as "Thoroughman" or "Thouroughman." (*Compare* Doc. 1, #1, *with id.* at #2). But the name is spelled "Thoroughman," with only one "u," on the official Scioto County Sheriff's website. *About Your Sheriff*, Scioto Cnty. Sheriff's Off., https://perma.cc/VP3H-XWAP. And the Court "can take judicial notice of information posted on an official government website regarding that entity." *Epps v. United States*, No. 1:23-cv-510, 2024 WL 2176877, at *5 n.1 (S.D. Ohio May 15, 2024); Fed. R. Evid. 201(b) ("The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.").

[2] Although the Complaint never lists Loesch's job title, the Scioto County Prosecutor's website lists him as a member of the criminal division of that entity. *Meet the Team*, Scioto Cnty. Prosecutor's Off., https://perma.cc/596T-64GR. Because this information is posted on an official government website, the Court can take notice of it. *See supra* note 1.

and the Scioto County Prosecutor's Office improperly secured the sexual battery indictment with "zero evidence to support their claim." (*Id.* at #2–4, 7).

On February 23, 2024, Defendants moved for judgment on the pleadings. (Doc. 11). Under the local rules, Layne's opposition to that motion was due on March 15, 2024—21 days later. S.D. Ohio Civ. R. 7.2(a)(2). When Layne still had not responded by May 7, 2024, the Court issued an Order to Show Cause (Doc. 17). That Order directed Layne to show cause why the Court should not dismiss the case for failure to prosecute or treat the Motion for Judgment on the Pleadings as unopposed. (*Id.* at #91–92).

Layne timely responded to the Order to Show Cause, but, as further explained below, his response said nothing about the Motion for Judgment on the Pleadings. (Doc. 18). So the Court treats the Motion for Judgment on the Pleadings as unopposed. And for the reasons discussed below, the Court **GRANTS** Defendants' Motion for Judgment on the Pleadings (Doc. 11) and **DISMISSES** Layne's Complaint (Doc. 1) **WITHOUT PREJUDICE**.

## BACKGROUND

Layne was indicted in the Scioto County Court of Common Pleas for sexual battery on July 23, 2021. *State v. Layne*, No. 21CR000394 (Scioto Cnty. Ct. Com. Pl.), Indictment (filed July 23, 2021).[3] The case was dismissed without prejudice at the prosecutor's request in October 2021. *Id.*, Agreed J. Entry (filed Oct. 28, 2021) ("The

---

[3] "Federal courts may take judicial notice of proceedings in other courts of record." *Rodic v. Thistledown Racing Club, Inc.*, 615 F.2d 736, 738 (6th Cir. 1980) (citation omitted); *accord Dates v. HSBC*, No. 1:24-cv-81, 2024 WL 860918, at *1 n.1 (S.D. Ohio Feb. 29, 2024).

prosecuting attorney, on behalf of the State of Ohio, and in open court, for good cause shown, with leave of court, entered a dismissal without prejudice at the written request of the victim herein.").

One day shy of the two-year limitations period that applies to his claims, *see Waseleski v. City of Brooklyn*, No. 1:23-cv-548, 2024 WL 1767279, at *9 (N.D. Ohio Apr. 24, 2024), Layne brought this case. (Doc. 1). He alleges Defendants improperly obtained the sexual battery indictment in the underlying criminal case. (*Id.* at #4 ("Detectives at the Scioto County [S]heriff's [O]ffice working with the Scioto County [P]rosecutor's [O]ffice[] secured a[ ]sexual battery indictment against me with zero evidence to support their claim … in response to my actions on [sic] not supporting coworkers that [sic] murdered an inmate and cleaning up the scene.")). So he sued them all under 42 U.S.C. § 1983, for "Deprivation of Rights under color of law [in violation of] 18 U.S.C. § 242" and "Conspiracy against rights [in violation of] 18 U.S.C. § 241." (*Id.* at #2–3 (listing Thoroughman, Davis, Conkle, and the Sheriff's Office as Defendants and checking boxes noting that these claims were brought against them are official-capacity claims); *id.* at #7 (listing the Prosecutor's Office, Tieman, Evans, and Loesch as Defendants on an additional typed page but making no mention of whether they are sued in their individual or official capacities)). For relief, he seeks "assist[ance] [] in reviewing and removing the indictment," back pay, and punitive damages. (*Id.* at #5).

Defendants answered the Complaint, (Doc. 9), and then moved for judgment on the pleadings, (Doc. 11). In their motion, they press five arguments. First, they

3

contend that two Defendants, "[t]he Scioto County Sheriff's Office and Scioto County Prosecutor's Office," are "non *sui juris*." (Doc. 11, #60). Second, they claim Layne "has failed to state a cognizable official capacity (*Monell*) claim." (*Id.*). Third, they note that 18 U.S.C. §§ 241 and 242 do not provide private rights of action. (*Id.*). Fourth, they say the Court lacks the authority to grant the relief Layne requests. (*Id.*). And finally, they say that "[e]ven if the Court construes Plaintiff's claims against Defendants in their individual capacity, the Defendants are entitled to absolute and/or qualified immunity." (*Id.*). Defendants also report that they served Layne with the motion by email. (*Id.* at #69). Then, three days later, on February 26, 2024, the Clerk's office separately mailed Layne a notice that Defendants had filed a motion for judgment on the pleadings, and that he had 21 days to respond. (Doc. 12, #70).

Layne did not respond to the Motion for Judgment on the Pleadings. Instead, he moved "to unseal the grand jury indictment." (Doc. 13, #71). Defendants responded that the grand jury indictment was never sealed and they have reason to believe that what Layne is really seeking is the grand jury transcripts. (Doc. 15, #83 ("Based on telephone conversations with Plaintiff, [Defendants] believe[] that what Plaintiff really wants is the grand jury transcripts.")). In light of this representation, the Magistrate Judge concluded that even assuming Layne were actually seeking transcripts, he first needed to seek the transcripts in state court before moving for relief in federal court. (Doc. 16, #88–89). She therefore denied the Motion to Unseal without prejudice to refiling. (*Id.*). Layne did not object to that order.

4

When Layne still had not responded to Defendants' Motion for Judgment on the Pleadings by May 7, 2024, the Court issued an Order to Show Cause (Doc. 17). That Order directed Layne to show cause by May 21, 2024, as to why the Court should not dismiss the case for failure to prosecute and/or treat the Motion for Judgment on the Pleadings as unopposed. (*Id.* at #91–92). Layne timely responded—or, more accurately, sort of responded. In a couple-sentence filing, Layne states that since March 1, 2024, he "ha[s] no means to check the case status online" and "ha[s] received no notifications or orders from the [C]ourt" other than the Magistrate Judge's Order denying the Motion to Unseal and the Court's Order to Show Cause. (Doc. 18, #93). But that is unsurprising given those were the only two orders the Court has entered since that date. Beyond that, Layne "request[s] that the court not dismiss [his] case as [he] ha[s] done nothing but try to expose the county-wide corruption and false accusations levied against [him]." (*Id.*). But his response said nary a word about the Motion for Judgment on the Pleadings. In short, it appears Layne received both the Motion for Judgment on the Pleadings (which Defendants filed before March 1, 2024), and the Court's order requiring him to respond to it, but elected not to do so.

The matter is now ripe for the Court's review.

## LEGAL STANDARD

A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) "is appropriately granted when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *Tucker v. Middleburg-Legacy Place, LLC*, 539 F.3d 545, 549 (6th Cir. 2008) (cleaned up). To make that

5

determination, the Court applies the same standards applicable to resolving motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Id.*

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must allege "sufficient factual matter … to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). While a "plausible" claim for relief does not require a showing of probable liability, it requires more than "a sheer possibility that a defendant has acted unlawfully." *Id.* The complaint must allege sufficient facts to allow the Court "to draw the reasonable inference that the defendant is liable." *Id.* In other words, a plaintiff must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012) (quoting Fed. R. Civ. P. 8(a)(2)).

To meet this pleading standard, a complaint must contain "either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory." *Terry v. Tyson Farms, Inc.*, 604 F.3d 272, 275–76 (6th Cir. 2010) (citation omitted). And "conclusory allegations or legal conclusions masquerading as factual allegations will not suffice." *Id.* at 276 (citation omitted). In short, an action will be dismissed where "there is no law to support the claims made" or "the facts alleged are insufficient to state a claim." *Stew Farm, Ltd. v. Nat. Res. Conservation Serv.*, 967 F. Supp. 2d 1164, 1169 (S.D. Ohio 2013).

"In reviewing a motion to dismiss, [the Court] construe[s] the complaint in the light most favorable to the plaintiff, draw[s] all reasonable inferences in its favor, and accept[s] all well-pleaded allegations in the complaint as true." *Keene Grp., Inc. v.*

6

*City of Cincinnati*, 998 F.3d 306, 310 (6th Cir. 2021). But that does not mean the Court must take everything plaintiffs allege at face value, no matter how unsupported. The Court may disregard "naked assertions" of fact or "formulaic recitations of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (cleaned up). And it has limited scope to consider materials outside the pleadings. *Elec. Merch. Sys. LLC v. Gaal*, 58 F.4th 877, 883 (6th Cir. 2023) ("Generally, in considering a motion to dismiss, the district court is confined to considering only the pleadings … . However, the court may, in undertaking a 12(b)(6) analysis, take judicial notice of matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint." (cleaned up)).

Because Layne is proceeding pro se, the Court also notes that a pro se litigant's pleadings should be construed liberally and are subject to less stringent standards than formal pleadings filed by attorneys. *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Franklin v. Rose*, 765 F.2d 82, 84–85 (6th Cir. 1985). But pro se litigants still must comply with the procedural rules that govern civil cases. *McNeil v. United States*, 508 U.S. 106, 113 (1993). And "[t]he liberal treatment of pro se pleadings does not require lenient treatment of substantive law." *Johnson v. Stewart*, No. 08-1521, 2010 WL 8738105, at *3 (6th Cir. May 5, 2010).

## LAW AND ANALYSIS

### A. The Motion for Judgment on the Pleadings is Unopposed.

To begin, the Court determines that the Motion for Judgment on the Pleadings (Doc. 11) is unopposed. Defendants filed it on February 23, 2024, so Layne's response

7

was due March 15, 2024. S.D. Ohio Civ. R. 7.2(a)(2). And he did not provide one. That said, Layne, who is after all proceeding pro se, could perhaps be forgiven for not knowing that local rules required a response by that date. But the docket also reflects that on February 26, 2024, (before the March 1, 2024, date on which he claims he stopped receiving mail from the Court, (Doc. 18, #93)), the Clerk mailed him a Notice, which included an express warning that a failure to respond to the Motion for Judgment on the Pleadings within 21 days could lead the Court to dismiss the case for failure to prosecute. (Doc. 12, #70 ("You are hereby notified that a motion for judgment on the pleadings has been filed by the Defendant(s) in this case (Doc. 11). Your failure to file a … response … within 21 days … may warrant judgment pursuant to Fed. R. Civ. P. 41(b) for failure to prosecute.")). Were that not enough, the Court also entered an Order to Show Cause on May 7, 2024, (which it also mailed to Layne) directing him to explain why it should not treat the Motion for Judgment on the Pleadings as unopposed, (Doc. 17, #92)—an instruction Layne ignored. And while Layne is proceeding pro se, "there is no basis for treating a pro se litigant more generously than a represented litigant when a pro se litigant fails to comply with an easily understood deadline." *Akaazua v. Walker Novak Legal Grp., LLC*, No. 19-2183, 2021 WL 4097500, at *1 (6th Cir. Jan. 8, 2021).

That is just the case here. Layne had ample notice that he needed to respond to the Motion for Judgment on the Pleadings, "[t]he time for filing responses has passed[,] and no responses have been filed." *Bocarov v. Puffenberger*, No. 2:10-cv-39, 2011 WL 3476600, at *1 (S.D. Ohio Aug. 9, 2011); *see* S.D. Ohio Civ. R. 7.2(a)(2) ("Any

8

memorandum in opposition shall be filed within twenty-one days after the date of service of the motion."). "The Court therefore finds the motion to be unopposed." *Bocarov*, 2011 WL 3476600, at *1; *see also FTC v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 629 (6th Cir. 2014) ("[T]he FTC's summary judgment motion was unopposed because Defendants failed to file a brief in opposition to the motion."). And "failure to respond constituted a waiver of any argument that dismissal was improper."[4] *Akaazua,* 2021 WL 4097500, at *1.

### B.  Layne Brings a Malicious Prosecution Claim Against a Governmental Entity.

The Court could perhaps grant the Motion for Judgment on the Pleadings based solely on Layne's failure to respond. But the Court concludes that, especially given Layne's pro se status, the better route is also to conduct an independent review—at least briefly—of the pleadings and Defendants' arguments. *Cf. Williams v. Parikh*, No. 1:23-cv-167, 2023 WL 8824845, at *11 n.17 (S.D. Ohio Dec. 21, 2023) (analyzing an issue regarding relief not requested by a pro se plaintiff because his "pro se [status] g[ave] the Court pause about the propriety of holding [t]his failure … against him"). Ultimately, however, that does not change the result—dismissal is warranted.

---

[4] Technically, "forfeiture" may be a better description than "waiver." A waiver refers to an intentional relinquishment of a known right. *Hamer v. Neighborhood Hous. Servs. of Chi.*, 583 U.S. 17, 20 n.1 (2017). Forfeiture, on the other hand, refers to the failure to timely assert a right. *Id.* Failing to respond to a motion falls into the latter category, not the former. *Hill v. Xerox Bus. Servs., LLC*, 59 F.4th 457, 469 n.15 (9th Cir. 2023) (delineating the doctrines of waiver and forfeiture by noting that "waiver is defined as a party's intentional relinquishment or abandonment, which does not turn on the timing of when a right is asserted," which is forfeiture's focus (cleaned up)).

To start, the Court must first assess the nature of Layne's claims. Construing the Complaint liberally in Layne's favor, as is appropriate for pro se pleadings, the Court determines that the Complaint asserts a § 1983 claim alleging a Fourth Amendment violation based on malicious prosecution. *See Sykes v. Anderson*, 625 F.3d 294, 308 (6th Cir. 2010). True, Layne also cites two other statutory provisions, 18 U.S.C. §§ 241 and 242, in his pleading. (Doc. 1, #3). But they don't work, either directly or through § 1983. As to the former, settled law holds he has no direct private right of action under either criminal statute. *Am. Postal Workers Union v. Indep. Postal Sys. of Am., Inc.*, 481 F.2d 90, 93 (6th Cir. 1973) ("[C]riminal statutes can []be enforced [only] by the proper authorities of the United States Government[,] and a private party has no right to enforce these sanctions." (citation omitted)); *accord Kafele v. Frank & Wooldridge Co.*, 108 F. App'x 307, 308–09 (6th Cir. 2004) (same); *Cok v. Cosentino*, 876 F.2d 1, 2 (1st Cir. 1989) (noting that 18 U.S.C. §§ 241 and 242 "do not give rise to a civil action for damages"). Nor can violations of criminal statutes serve as the basis for a § 1983 claim. *Lee v. Stewart*, No. 20-5952, 2021 WL 6932349, at *2 (6th Cir. Aug. 24, 2021) ("Likewise, § 1983 provides no remedy for violating the listed federal criminal statutes or state laws."); *see generally Gonzaga Univ. v. Doe*, 536 U.S. 273, 284–85 (2002) (holding that federal statutes are not enforceable through § 1983 unless they create personally enforceable rights). So any claims Layne tries to make under those statutory provisions—whether directly or via § 1983—are nonstarters. That leaves Layne with only the § 1983 claim for malicious prosecution.

10

Then the Court must determine exactly who Layne is suing. Start with the easy ones—the two named Defendants who Layne *cannot* sue. Defendants are correct that neither the Sheriff's Office nor the Prosecutor's Office is *sui juris*. *Carmichael v. City of Cleveland*, 571 F. App'x 426, 435 (6th Cir. 2014) ("[F]ederal courts have held that, under Ohio law, a county sheriff's office is not a legal entity that is capable of being sued."); *Lenard v. City of Cleveland*, No. 1:17-cv-440, 2017 WL 2832903, at *2 (N.D. Ohio June 30, 2017) ("[T]he Cuyahoga County Prosecutor's Office[] [and] Sheriff's Office … are not proper Defendants. They are not *sui juris*, meaning they are not independent legal entities capable of suing or being sued."). Rather, the Scioto County Sheriff's Office and the Scioto County Prosecutor's Office "are merely subunits of [Scioto] County." *Lenard*, 2017 WL 2832903, at *2. So Layne's "§ 1983 claim[s] against [both those entities are] … really … against the County." *Polachek v. Roberts*, No. 1:22-cv-742, 2023 WL 6348388, at *2 (S.D. Ohio Sept. 28, 2023).

That same point (i.e., that the claim is really against the County) ends up being true for the Defendants who are named individually. To see why, start from the proposition that a plaintiff can assert a § 1983 claim against a given defendant in that defendant's individual capacity, official capacity, or both. The difference between the two types of claims is that an individual-capacity claim imposes liability on the defendant personally, while an official-capacity claim is essentially a claim against the defendant's employer. *Williams*, 2023 WL 8824845, at *9. Here, as noted above, everywhere checkboxes were available on the form complaint, Layne checked only the boxes signifying that he was bringing official-capacity claims. (Doc. 1, #2–3 (listing

11

Thoroughman, Davis, Conkle, and the Sheriff's Office as Defendants and checking only the boxes for official-capacity claims against each)). True, he named additional Defendants on an additional typed page that did not include checkboxes. (*Id.* at #7 (listing the Prosecutor's Office, Tieman, Evans, and Loesch)). But there is no reason to believe he intended to sue these Defendants in any different capacity than the Defendants listed on the page pre-printed with checkboxes. "The Court therefore gives that portion of the Complaint its most natural meaning and concludes that [Layne] is not suing the [Defendants] in [their] individual capacit[ies]." *Estep v. Comm'r of Soc. Sec.*, No. 1:22-cv-474, 2024 WL 126382, at *2 n.3 (S.D. Ohio Jan. 11, 2024). When faced with official-capacity claims, Defendants "stand in the shoes of the entity they represent." *Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003) (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). In other words, an official-capacity suit is "the equivalent of a suit against the governmental entity"—here, Scioto County. *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994).

Putting that all together, in ruling on the unopposed Motion for Judgment on the Pleadings, the question the Court confronts is whether the Complaint plausibly alleges a § 1983 claim for malicious prosecution against Scioto County.[5]

---

[5] Although neither party has made the argument, as an unchartered county of Ohio, Scioto County itself is not an entity that can be sued. *Lovelo v. Clermont Cnty. Sheriff's Off.*, No. 1:23-cv-114, 2023 WL 8828008, at *2 (S.D. Ohio Dec. 21, 2023) ("Unchartered counties [in Ohio] … are not vested with a single attribute of sovereignty and, accordingly, cannot be sued in their own name as a separate entity." (cleaned up)); *Local Government*, Ohio Sec'y of State (May 22, 2024), https://ohio.gov/government/resources/local-government-rosters (listing only Cuyahoga and Summit Counties as chartered counties). "Instead, in cases against unchartered counties, litigants must sue the board of county commissioners, which does have the capacity to sue and be sued." *Lovelo*, 2023 WL 8828008, at *2. And that is just as true of § 1983 claims as it is of any other type of claim. *Lopez v. Foerster*, No. 20-2258, 2022 WL

12

## C. Layne Has Not Alleged a Cognizable § 1983 Malicious Prosecution Claim Against a Governmental Entity.

With the preliminaries out of the way, the Court turns to the key issue, which is whether Layne has stated a plausible claim. "A viable § 1983 claim against a governmental entity must allege (1) a constitutional violation, which (2) was directly caused by a municipal policy or custom." *Dillon v. Hamlin*, No. 1:23-cv-103, 2024 WL 707289, at *5 (S.D. Ohio Feb. 21, 2024) (citing *Hardrick v. City of Detroit*, 876 F.3d 238, 243 (6th Cir. 2017)). Layne falls short on both prongs.

Start with the first. To assert a claim for malicious prosecution, Layne must allege facts plausibly suggesting that he can meet four elements:

> First, the plaintiff must show that a criminal prosecution was initiated against the plaintiff and that the defendant made, influenced, or participated in the decision to prosecute. Second, because a § 1983 claim is premised on the violation of a constitutional right, the plaintiff must show that there was a lack of probable cause for the criminal prosecution. Third, the plaintiff must show that, as a consequence of a legal proceeding, the plaintiff suffered a deprivation of liberty, as understood in our Fourth Amendment jurisprudence, apart from the initial seizure. Fourth, the criminal proceeding must have been resolved in the plaintiff's favor.

*Sykes*, 625 F.3d at 308–09 (cleaned up). The Court acknowledges he meets the fourth element. Layne alleges that the criminal case was dismissed without prejudice, (Doc.

---

910575, at *6 (6th Cir. Mar. 29, 2022) ("§ 1983 does not change basic procedural rules permitting only 'juridical' entities to sue and be sued. ... We thus have held that several different types of § 1983 defendants were not suable entities under the relevant state's law."). So, in keeping with its obligation to construe pro se complaints liberally, the Court treats the Complaint as bringing a claim against the Scioto County Board of Commissioners, which has the capacity to be sued, rather than the County, which does not. *Williams*, 2023 WL 8824845, at *3–*4 (construing a pro se complaint as raising a claim against a juridical party when the complaint named a non-juridical entity). But that changes neither the question before the Court—whether Layne has plausibly alleged a § 1983 claim against a governmental entity— nor the answer to that question.

13

1, #4), which counts as favorable termination for malicious prosecution purposes. *See Thompson v. Clark*, 596 U.S. 36, 39 (2022). And he may just make it over the line as to the second—lack of probable cause. He says that the defendants had "zero evidence" that he committed sexual battery. (Doc. 1, #4). Rather, Layne (who is a corrections officer) alleges that Defendants were pursuing this action as retribution for his not "supporting coworkers that [sic] murdered an inmate." (*Id.*). Taken together, that may be enough. The first calls into question (albeit in a conclusory fashion) whether any evidence (and thus probable cause) existed. And the latter may make it plausible to believe that Defendants would proceed against him even without such evidence. So, for present purposes, the Court concludes Layne has sufficiently alleged that element as well.

But he falls short on the two remaining elements. As to the first element, he fails to allege what role *any* Defendant played in "mak[ing], influenc[ing], or participat[ing] in the decision to prosecute." *Sykes*, 625 F.3d at 308 (cleaned up). His Complaint alleges only in wholly vague and conclusory terms that all actors were involved. (Doc. 1, #4 ("Using their capacity in law enforcement, the [sic] Jodi Conkel, Ron Davis, and David Thoroughman, while working with the Scioto [C]ounty Prosecutor's [O]ffice[,] including Shane Tieman, Scott Evans, and Matthew Loesch, misconstrued laws to a grand jury to secure an indictment against me and arrested me with zero evidence that I had broken a law.")). But such a threadbare assertion does not cut it. *Iqbal*, 556 U.S. at 678. And as to the third, he fails to allege in his Complaint that he suffered any deprivation of liberty in connection with the charges

14

apart from the initial seizure. All four elements are necessary. *Dillon*, 2024 WL 707289, at *9 ("[A] [malicious prosecution] claim requires that all four elements are met, so if a plaintiff fails to demonstrate even one element, then the claim must fail." (cleaned up)). Not satisfying either the first or third elements of a malicious prosecution claim therefore dooms his Complaint (at least as currently drafted) for failure to allege a constitutional violation.

Layne also struggles on the policy or custom front. Recall that he is not suing any Defendant in their individual capacity. So even if a Defendant committed a constitutional violation, there must also be a basis for attributing that violation to the employer (Scioto County)—in other words, a basis for concluding that the violation resulted from a Scioto County "policy or custom." *Id.* at *5. As to that issue, "[t]here are at least four avenues a plaintiff may take to prove the existence of a municipality's illegal policy or custom." *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). A plaintiff may prove that the entity has an actionable, unconstitutional "policy" or "custom" in place by demonstrating: "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision[-]making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations." *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) (citing *Thomas*, 398 F.3d at 429).

Start with the first avenue: the existence of an illegal official policy or custom. "To survive a motion to dismiss based on that theory, [Layne] needs to allege facts

15

that point towards a policy or custom that forms the basis of [his] claim." *Dillon*, 2024 WL 707289, at *5 (cleaned up). Here, Layne would need plausible allegations that Scioto County has a policy or custom of maliciously prosecuting people. But "the Complaint itself is devoid of any factual enhancement that would allow the Court to [draw a] reasonable infer[ence about] the existence of an alleged policy that caused any particular constitutional violation." *Austin v. City of Cincinnati*, No. 1:15-cv-608, 2016 WL 1718264, at *2 (S.D. Ohio Apr. 28, 2016). In fact, the Complaint does not even contain the words "policy" or "custom." Nor does Layne point to any specific actions by persons who allegedly had final policymaking authority regarding the decision to prosecute him. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988) (actions undertaken by final decisionmakers may suffice to establish policy or custom for *Monell* purposes (citing *Pembaur v. Cincinnati*, 475 U.S. 469 (1986))). In sum, he fails to set forth any facts that plausibly allege the existence of an official policy.

True, he names the Scioto County Prosecutor as one Defendant. (Doc. 1, #7). And it is perhaps plausible to assume that the County Prosecutor is the final decisionmaker for prosecution decisions. So the malicious prosecution claim against that Defendant may be on a different footing from the malicious prosecution claims against the other Defendants. *See Praprotnik*, 485 U.S. at 123. But even so, the claim still falls short. Layne provides no non-conclusory allegations (indeed no allegations at all) that the County Prosecutor himself *knew* that the criminal charges were meritless when he filed or pursued them. The closest Layne comes is when he says that "the prosecution admitted there was zero evidence to support any charges but

16

pursued the case at the request of the [S]heriff's [O]ffice." (Doc. 1, #4). But exactly who does he mean by "the prosecution," and who at "the sheriff's office" requested the case to go forward? If he fills in those blanks, it is perhaps possible this case could proceed as an official-capacity claim against the County Prosecutor. But as currently pleaded, the barebones complaint does not work.

The same shortcoming is present as to the second avenue. "The Sixth Circuit recognizes two methods for finding ratification: (1) when an individual with policymaking authority issues a final decision affirming a subordinate's decision[,] … thereby adopting it as municipal policy, and (2) when a policymaker fails to [initiate a] meaningful[] investigat[ion into] the acts of a subordinate." *Meyers v. Cincinnati Bd. of Educ.*, 343 F. Supp. 3d 714, 729 (S.D. Ohio 2018). But Layne has made no factual allegations to support a finding of ratification under either approach. All he alleges is that he was prosecuted, that the prosecution was completely meritless, and that the case was dismissed without prejudice. (Doc. 1, #4). That is not enough. Perhaps most importantly, he does not allege what role any of the named Defendants played in any of these events. Again, if Layne could provide facts showing that the County Prosecutor affirmed a decision by a subordinate to pursue a claim both knew was meritless, things may be different. But the current iteration of the Complaint contains no such allegations.

Layne likewise falls short of alleging a viable inadequate training or supervision theory. "A failure-to-train claim … requires a showing of prior instances of unconstitutional conduct demonstrating that the municipality had ignored a

17

history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury." *Burgess*, 735 F.3d at 478 (cleaned up). "[Layne's] problem is that he once again fails to allege *facts* giving rise to a reasonable inference that he could make this showing." *Stager v. Hanshaw*, No. 1:23-cv-120, 2024 WL 1556708, at *5 (S.D. Ohio Apr. 10, 2024). So that avenue does not help him.

That leaves the final avenue laid out in *Thomas*—the "inaction theory." Under this theory, a plaintiff can make out a valid claim by pointing to a policy of tolerating federal rights violations that "is unwritten but nevertheless entrenched." *Thomas*, 398 F.3d at 429. To prevail on that theory, a plaintiff must show four elements: (1) "a clear and persistent pattern" of rights violations; (2) "notice or constructive notice on the part of the defendant"; (3) "the defendant's tacit approval of the unconstitutional conduct, such that the[] deliberate indifference in [its] failure to act can be said to amount to an official policy of inaction"; and (4) a causal link between the custom and the constitutional deprivation. *Id.* (cleaned up). "Although the third and fourth elements differ from a failure-to-train claim[,] … Plaintiffs bringing either type of claim must show (1) a history of rights violations such that (2) the defendants were on notice." *Stager*, 2024 WL 1556708, at *6. Layne therefore "falls short [on both avenues] for the same reasons": that "he has plausibly alleged neither a clear pattern of rights violations nor notice." *Id.*

In short, "[t]he Court is under no duty to conjure a policy or custom that would support Plaintiff's suit. Rather, Plaintiff bears the burden of explaining with minimal, but sufficient, facts exactly what policy or custom caused his injury."

18

*Lovelace v. City of Memphis Police Dep't,* No. 08-2776, 2010 WL 711190, at *3 (W.D. Tenn. Feb. 24, 2010). So the lack of any facts that could satisfy the requirements of any of the four avenues *Thomas* described dooms the Complaint for failure to meet the policy or custom prong.

All that said, even though Layne *has not* pleaded enough facts, either as to the underlying constitutional violation or as to the policy or custom prong, to withstand a motion for judgment on the pleadings, it is not at all clear that he *could not* do so if he pleaded all the facts at his disposal in an amended complaint. *Brown v. Matauszak*, 415 F. App'x 608, 614 (6th Cir. 2011) ("Generally, if it is at all possible that the party against whom the dismissal is directed can correct the defect in the pleading or state a claim for relief, the court should dismiss with leave to amend." (cleaned up)). So the Court dismisses the Complaint without prejudice—a result that is particularly appropriate because Layne is an "untutored pro se litigant." *Id.* at 614–15 (cleaned up).

## CONCLUSION

For the reasons discussed above, the Court **GRANTS** Defendants' Motion for Judgment on the Pleadings (Doc. 11) and **DISMISSES** Layne's Complaint (Doc. 1) **WITHOUT PREJUDICE**. The Court therefore **DIRECTS** the Clerk to enter judgment and to **TERMINATE** this case on its docket.

  **SO ORDERED.**

June 20, 2024
**DATE**

  **DOUGLAS R. COLE**
  **UNITED STATES DISTRICT JUDGE**